**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DENNIS PEYTON | : | Case No. 1:24-mc-0010 |
| | : | |
| Movant. | : | |
| | : | |
| ---------------------------------------------- | : | |
| | : | |
| AMERITAS LIFE INSURANCE CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | United States District Court |
| v. | : | District of Delaware |
| | : | Case No. 1:23-cv-00236 (GWB) |
| WILMINGTON SAVINGS FUND | : | |
| SOCIETY, FSB, SOLELY AS SECURITIES | : | |
| INTERMEDIARY, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| ---------------------------------------------- | : | |
| | : | |
| WILMINGTON SAVINGS FUND | : | |
| SOCIETY, FSB, SOLELY AS SECURITIES | : | |
| INTERMEDIARY, | : | |
| | : | |
| Counter-Claimant, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERITAS LIFE INSURANCE CORP., | : | |
| | : | |
| Counter-Defendant. | : | |

## <u>MOVANT, DENNIS PEYTON'S MOTION TO QUASH SUBPOENA</u>

Pursuant to Fed. R. Civ. P. 45(c), Movant Dennis Peyton moves for an order quashing

Defendant Wilmington Savings Fund Society, FSB, Solely as Securities Intermediary's ("WSFS")

subpoena issued to Mr. Peyton on August 1, 2024. The subpoena subjects Mr. Peyton to an undue

1

burden and should accordingly be quashed by this Court. A Memorandum in Support is attached

hereto.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Christopher B. Burch*

Christopher B. Burch (0087852)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Telephone: (614) 221-3155
Fax: (614) 221-0479
cburch@baileycav.com

Ilya Schwartzburg (*pro hac vice*
motion forthcoming)
Cozen O'Connor
One Liberty Place, 1650 Market
Street Suite 2800
Philadelphia, PA 19103
P: 215-366-4443
F: 215-372-2363
ischwartzburg@cozen.com
bburack@cozen.com


*Attorneys for Movant, Dennis Peyton*

</div>

2

<u>**MEMORANDUM IN SUPPORT**</u>

## I.   INTRODUCTION

This is a special action brought by Dennis Peyton to quash a third-party deposition subpoena issued by Wilmington Savings Fund Society, FSB ("WSFS"), seeking compliance in this District, in connection with litigation pending in the District of Delaware: *Ameritas Life Ins. Corp. v. Wilmington Savings Fund Society, FSB, Solely as Securities Intermediary*, C.A. No. 1:23-cv-00236(GBW) (the "Delaware Action"). Mr. Peyton is a third party to the Delaware Litigation—a retired former employee of the plaintiff, Ameritas Life Insurance Corp. ("Ameritas"). Mr. Peyton's deposition is unnecessary, unduly burdensome, disproportionate to the needs of the case, and WSFS's latest bad-faith attempt to defy the discovery rulings in this case.

## II.   THE UNDERLYING LITIGATION

This case is about stranger-originated life insurance, or "STOLI," a practice where investors manufacture life insurance policies on the lives of seniors citizens. *PHL Variable Life Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059, 1069-70 (Del. 2011). STOLI polices are designed to look legitimate; but, in reality, investors are using seniors as instrumentalities to wager on their lives and profit from their deaths. *Id.* at 1074 ("STOLI schemes are designed to feign technical compliance with insurable interest statutes"). STOLI policies are illegal in most states, running afoul of common law and statutory requirements that life insurance policies have insurable interest at inception. In Delaware, whose laws control here, STOLI violates the statutory, public policy, and constitutional prohibitions on human life wagering. *Wilmington Trust, N.A., v. Sun Life*, 294 A.3d 1062, 1072, 1074 (Del. 2023) ("*Frankel & DeBourbon*") ("our recent decisions have been crystal clear that Delaware courts will never enforce such a policy"). Consequently, if, as here, a policy is issued to a Delaware trust without insurable interest at inception, an insurer is

*never* required to pay the death benefit, the policy is void *ab initio*, and such a challenge can be brought outside the 2-year contestability period. *Id.* at 1072-74; *Price Dawe*, 28 A.3d at 1067-68.

This case concerns a $3 million policy, issued by Ameritas's predecessor (Union Central Life Insurance Company) in 2007 on the life of Marvin Flaks (the "Policy."). Unbeknownst to Ameritas (and Union Central), the Policy was manufactured as part of a STOLI scheme called Ocean Gate. In particular, as discovery has confirmed, an investor (not the insured) paid the Policy's premium and that investor took ownership of the Policy at inception through a clandestine transfer of the beneficial interest in the trust that owned the Policy. The Policy is currently owned by an institutional investor known as BroadRiver, a sophisticated fund that specializes in buying large blocks of policies on the lives of senior citizens. BroadRiver holds the Policy through WSFS, which acts as securities intermediary and serves as record owner of the Policy.

When Mr. Flaks passed away in 2022, WSFS submitted a request for the death claim to Ameritas. Ameritas's claims examiner, Scott Foreman, identified the Policy as meeting the company's written criteria for policies having potential characteristics of potential STOLI to be referred to Ameritas's legal department for further review. Following Ameritas's policy, Mr. Foreman referred the claim to the in-house legal department, which, in turn, referred the matter to outside counsel to investigate and advise. Following that investigation, Ameritas commenced this case seeking a declaration that the Policy lacked insurable interest under Delaware law. WSFS denies that the Policy is STOLI and counterclaimed for breach of contract (seeking the Policy's death benefit), insurance bad faith (claiming Ameritas lacked a reasonable basis to challenge the claim), fraud (claiming Ameritas made false statements about the Policy in yearly correspondence), and, alternatively for unjust enrichment (seeking as restitution the premiums paid in the event the Policy is void *ab initio*).

**A.      The District Court Ruled That Other Policies and Other Litigation Is Not Discoverable.**

The parties each issued significant written discovery requests seeking, *inter alia*, what both parties' knew about insurable interest issues in general, and the Policy's insurable interest problems in particular. Indeed, under controlling Delaware law, WSFS's counterclaim for a premium refund requires WSFS to satisfy a fault-based test that turns on what it (and its client BroadRiver) knew or should have known about the Policy's insurable interest problems. *Geronta Funding v. Brighthouse Life Ins. Co.*, 284 A.3d 47, 72-73 (Del. 2022) ("*Seck*"). When WSFS/BroadRiver refused to run the mutually agreed-upon search term "insurable interest," Ameritas moved to compel. D.I. 75 (attached as Exhibit C). WSFS argued that this case was about a "single policy" and that the proposed search term was capturing too many documents unrelated to *this* Policy. *See* WSFS's Opposition, D.I. 76 at 1-2 (attached as Exhibit D). The District Court agreed with WSFS, ruling that "insurable interest" was overbroad, because it was capturing knowledge about other policies, and ruling that information about other policies and other litigation was not discoverable. Order dated Apr. 15, 2024, D.I. 94 (attached Exhibit E). As the District Court ruled: Courts within this circuit and elsewhere have routinely found that discovery of other transactions or litigation in the context of litigation involving insurance policies is not properly discoverable because of its tenuous nature." *Id.* (citation and quotation omitted).

**B.      WSFS Continually Tries To Violate The Ruling It Secured.**

Despite securing a ruling that information about other policies and other litigation is not discoverable, WSFS unapologetically continued to demand this exact kind of information from Ameritas. With discovery matters referred to an appointed master, WSFS apparently thought it could set aside the rulings it secured and play by a different set of rules. Indeed, WSFS continued to demand that Ameritas produce deposition transcripts from other STOLI cases—i.e., *other*

*litigation* about *other policies*—and moved to compel the production of these transcripts. D.I. 116 (attached as Exhibit F). WSFS claimed it *was* entitled to see information about other policies and other litigation because they were "related" cases, in that they supposedly involved the same "practice" that WSFS was alleging here—*i.e.,* the alleged challenging policies for lack of insurable interest when claims are submitted rather than doing so preemptively. WSFS's Br. In Support of Motion to Compel at 1-2 (attached as Exhibit G). Not surprisingly, the discovery master did not set aside the District Court's ruling, did not allow WSFS to play by a different set of rules, and denied the motion on the grounds that the District Court had already ruled that other policies and other litigation were not discoverable. D.I. 135 (attached as Exhibit H).

WSFS filed several other frivolous discovery motions. For example, WSFS asked counsel for Ameritas to explain its basis for issuing various third-party subpoenas, and when that request to violate the mental impressions of opposing counsel was denied, WSFS moved for an order compelling Ameritas to explain why its counsel issued each of several third-party subpoenas. D.I. 85 at 3 (attached as Exhibit I). This bizarre and improper motion was, predictably, denied. D.I. 134 at 3-4 (attached as Exhibit J).

### C.     WSFS's Deposition Requests.

WSFS has now demanded 9 Ameritas depositions, including many overlapping/duplicative witnesses, and, most glaringly, Ameritas's in-house counsel (Andrea Snowden). *See, e.g.,* Exhibit B at 14. Ameritas agreed to produce six witnesses for in-person depositions: Scott Foreman, Rhonda Loosle, Kelly Halverson, Scott Corbett, Dave Voelker, and Scott Farmen. Scott Foreman is the line claims examiner who reviewed WSFS's claim on this Policy and referred it to Legal. Rhonda Loosle is the current supervisor of Claims, the current most senior member of the Claims department (Mr. Peyton was the prior most senior member), who was also a manager during Mr.

Peyton's tenure and was designated as a Rule 30(b)(6) witness to Ameritas's claims procedure in this case and in general regarding STOLI in the claims context. Kelly Halverson is Senior Vice President, Chief Actuary and Underwriting of the Individual Division and has personal knowledge regarding Ameritas's anti-STOLI efforts.  Scott Corbett is Vice President and Chief Underwriter and will testify as a Rule 30(b)(6) witness to Ameritas's underwriting in this case and in general regarding STOLI. Dave Voelker is Senior Vice President in Individual Operations and will testify as a Rule 30(b)(6) witness regarding the servicing, particularly of this Policy. And Scott Farmen is Head of Compliance and will testify as a Rule 30(b)(6) and fact witness regarding Ameritas's anti-STOLI efforts with agents, including regarding this Flaks Policy Ameritas. This was (and is) well above and beyond what was required and far more than the single witness WSFS/BroadRiver have produced to date.

WSFS still insisted on deposing in-house counsel (Ms. Snowden), an additional underwriting officer (Bill Shamleffer), and an additional claims officer (the Movant here, Dennis Peyton). Despite explaining that Ms. Snowden would assert privilege to nearly all questions put to her, WSFS moved to compel her deposition. Despite explaining that Mr. Shamleffer's testimony would be duplicative of the underwriting testimony from Scott Corbett, and despite having not yet taken a single deposition, WSFS moved to compel Mr. Shamleffer's deposition. And despite explaining that Mr. Peyton was retired and that Ameritas was no longer using him as a witness (designating his successor Ms. Loosle instead), WSFS moved to compel Mr. Peyton's deposition. And, despite being told that such a motion must be litigated in the place of compliance, WSFS chose to ignore Rule 45 and due process by filings all three motions in Delaware. *See* Exhibit A at 1; D.I. 119 (attached as Exhibit K). Those motions were frivolous and should never have been filed. Among other things, it was absurd to claim 9 depositions were needed before WSFS bothered

to take the 6 Ameritas was offering. Indeed, Ameritas had been trying, for months, to make its witnesses available, but WSFS continually asked to schedule depositions only to unilaterally cancel them.[1]

As expected, WSFS's motion to compel these depositions was denied. The discovery master rejected the completely improper request to depose in-house counsel. D.I. 130 (attached as Exhibit M). The discovery master also rejected the request to depose the underwriting officer (Bill Shamleffer) because WSFS could not demonstrate a sufficient need, especially without even trying to first depose Ameritas's designee from the underwriting department (Scott Corbett). *Id.* at 2-3. The discovery master nevertheless cautioned WSFS about re-filing. And the discovery master denied the request to depose Mr. Peyton, correctly following Rule 45 and concluding that the motion should have been filed in the place of compliance (i.e., in this District). *Id.* at 4-6.

Rather than simply taking the six depositions and then re-assessing whether there was any actual and proportionate need for additional depositions—as the discovery master ruled—WSFS had the audacity to turn around an hour after the ruling and re-issue the subpoena to Mr. Peyton, demanding an in-person deposition 14 days later unless he moved for a protective order. *See* Exhibit N at 3-4.

III.    **ARGUMENT**

        A.       **This Court Should Quash Mr. Peyton's Deposition Subpoena.**

                1.       **Mr. Peyton Has No Meaningful Knowledge About This Policy.**

---

[1] WSFS filed yet another petty discovery motion, insisting on in-person depositions in two different cities, but refusing to take any deposition on back-to-back days and insisting that all the attorney fly in to the same city multiple times. That motion was resolved when WSFS dropped its impractical and burdensome demands. *See* Ameritas's Br. Opposing Motion For Deposition Dates (attached as Exhibit L).

Mr. Peyton was the most senior member of the Claims department when the death claim on the Policy was submitted. But Mr. Peyton was a supervisor, so it was not his job to examine the claim—that was done by the assigned claims examiner, Scott Foreman, who WSFS has already deposed. Mr. Peyton was, at most, copied on a few emails and has confirmed that he has no recollection of the claims process for this Policy or anything else about this Policy. *See* Peyton Affidavit (attached as Exhibit O). This makes sense, not only because Mr. Peyton is retired, but because under Ameritas's written death claim protocol, once a policy is identified as meeting certain defined criteria, the claim is not handled by the claims department, it is referred to the *legal* department. That is, of course, what happened here. Scott Foreman identified the high-level potential STOLI criteria and referred the claim to in-house counsel.

So to the extent WSFS wants to question Mr. Peyton about this Policy, he has no recollection, he played only a minor role, and even if he did have a more firm recollection, any non-privileged information he would be permitted to provide about the claims process after it was referred to legal would, at best, be completely duplicative of the information WSFS already received. Indeed, Ameritas provided the non-privileged aspects of the investigation in an interrogatory response—*i.e.,* the facts developed in the investigation by counsel. Ameritas has turned over a redacted version of the legal memo from outside counsel, showing the facts contained therein. And WSFS has now spent a full day questioning Mr. Foreman and another full day questioning Ms. Loosle as a 30(b)(6) designee about the claims process, and in her individual capacity as a manager in the claims department at the time the Flaks claim was made.

To the extent WSFS is now trying to question Mr. Peyton about the general claims process, that was fully exhausted through the deposition of Ms. Loosle—who, again, is Mr. Peyton's

7

successor and was designated to testify on that precise topic. Anything Mr. Peyton could theoretically offer on this general topic would be completely duplicative.

To the extent WSFS is trying to question Mr. Peyton about subjects unrelated to this Policy, as discussed *supra*, such topics are not discoverable. Indeed, if WSFS is claiming a need to ask questions about how Ameritas came to bring other litigations, or challenge other policies, that is not discoverable under the law of this case.

In reality, however, WSFS has never articulated any legitiamte need to depose Mr. Peyton, claiming it had no duty to do so. Indeed, WSFS took the absurd position that it could depose any witness it wanted, so long as that witness had relevant testimony, and it stayed under the 105-hour cap. Not so. WSFS lost on this issue already and its decision to force Mr. Peyton to file this motion lacks good faith. WSFS's position, for months, has been that because Ameritas put Mr. Peyton on its initial disclosures (and included him in broad answers about witnesses that might have any knowledge about this case or these claims), that WSFS was automatically entitled to depose him. While it is true that Ameritas did originally intend to *designate* Mr. Peyton to discuss the general claims process and to educate himself about this Policy in particular, Mr. Peyton retired during the litigation. So Ameritas designated his successor (Ms. Loosle) instead, who was equally capable of testifying as a designee. And, of course, the assertion of privilege was (and is) going to be the same as to what the witnesses can say about the claims process in this case once it was referred to legal.

To drag Mr. Peyton out of retirement for a deposition about a Policy he does not remember is completely unnecessary, unduly burdensome, and disproportionate to the needs of this case. The information WSFS wants it either already got, does not exist, or is privileged.

8

**IV.      CONCLUSION**

Mr. Peyton should not be dragged out of retirement to testify about a death claim he was

only tangentially involved in, has no recollection of, and can, at best, offer duplicative testimony

about. Mr. Peyton is no longer being relied upon as a witness by Ameritas and a protective order

should granted to avoid this abusive and wholly unnecessary deposition.

Dated: August 26, 2024

<div style="margin-left: 45%;">

Respectfully submitted,

*/s/ Christopher B. Burch*
Christopher B. Burch (0087852)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Telephone: (614) 221-3155
Fax: (614) 221-0479
cburch@baileycav.com

Ilya Schwartzburg (*pro hac vice*
motion forthcoming)
Cozen O'Connor
One Liberty Place, 1650 Market
Street Suite 2800
Philadelphia, PA 19103
P: 215-366-4443
F: 215-372-2363
ischwartzburg@cozen.com
bburack@cozen.com

*Attorneys for Movant, Dennis Peyton*

</div>

## CERTIFICATE OF INFORMAL RESOLUTION

Now comes the undersigned and hereby certifies that pursuant to S.D. Ohio Civ. R. 37.1, counsel has attempted to informally resolve this matter through e-mail and telephone calls with counsel for WSFS with no success.

*/s/ Christopher B. Burch*
Christopher B. Burch (0087852)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Telephone: (614) 221-3155
Fax: (614) 221-0479
cburch@baileycav.com

Ilya Schwartzburg (*pro hac vice* motion forthcoming)
Cozen O'Connor
One Liberty Place, 1650 Market Street Suite 2800
Philadelphia, PA 19103
P: 215-366-4443
F: 215-372-2363
ischwartzburg@cozen.com
bburack@cozen.com

*Attorneys for Movant, Dennis Peyton*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and accurate copy of the foregoing with all supporting

documents was served by e-mail upon the following this 26th day of August, 2024:

**K&L GATES LLP**
Steven L. Caponi
Matthew B. Goeller
Megan E. O'Connor
600 N. King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.oconnor@klgates.com

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Khai LeQuang
Aaron M. Rubin
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
Telephone: 949-567-6700
klequang@orrick.com
amrubin@orrick.com

*Attorneys for Defendant Wilmington Savings*
*Fund Society, FSB, solely as Securities Intermediary*

<div align="right">

*/s/ Christopher B. Burch*
Christopher B. Burch (0087852)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Telephone: (614) 221-3155
Fax: (614) 221-0479
cburch@baileycav.com

Ilya Schwartzburg (*pro hac vice*
motion forthcoming)
Cozen O'Connor
One Liberty Place, 1650 Market
Street Suite 2800
Philadelphia, PA 19103

</div>

11

P: 215-366-4443
F: 215-372-2363
ischwartzburg@cozen.com
bburack@cozen.com


*Attorneys for Movant, Dennis Peyton*