# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| IN RE:<br>DENNIS PEYTON<br><br>    Movant. | Case No. 1:24-mc-0010<br>Barrett, J.<br>Litkovitz, M.J. |
| AMERITAS LIFE INSURANCE CORP.,<br><br>    Plaintiff/Counter-Defendant,<br><br>vs.<br><br>WILMINGTON SAVINGS FUND SOCIETY,<br>FSB, SOLELY AS SECURITIES<br>INTERMEDIARY,<br><br>    Defendant/Counter-Claimant. | Underlying litigation:<br>C.A. No. 1:23-cv-00236<br><br><br>**ORDER** |

This miscellaneous matter is before the Court on movant Dennis Peyton's motion to quash the third-party deposition subpoena issued by defendant/counter-claimant Wilmington Savings Fund Society, FSB, Solely As Securities Intermediary (WSFS) (Doc. 1)[1], WSFS's memorandum in opposition (Doc. 8), and plaintiff/counter-defendant Ameritas Life Insurance Corp. (Ameritas)'s "reply memorandum in further support of its[2] motion to quash" (Doc. 14). The parties have also filed sealed versions of their legal briefs and exhibits in support of their respective positions in this matter. (Docs. 11, 16). For the reasons that follow, the motion to quash is denied.

### I. Background

This matter originated in the United States District Court for the District of Delaware.

---

[1] Counsel for Ameritas brings the motion to quash on behalf of its former employee Mr. Peyton.
[2] While the motion to quash was brought in the name of Mr. Peyton, the reply memorandum is brought in the name of Ameritas.

*See Ameritas Life Ins. Corp. v. Wilmington Savings Fund Society, FSB, Solely as Securities Intermediary*, C.A. No. 1:23-cv-00236(GBW) (the "Delaware Action"). Union Central Life Insurance Company, the predecessor in interest to Ameritas, issued a $3 million insurance policy (the Policy) on the life of Mr. Marvin Flaks. Upon the death of Mr. Flaks, Ameritas refused to pay the death benefit to WSFS, the owner and beneficiary of the Policy. Ameritas alleges that upon receiving notification of Mr. Flaks' death "from third-party administrators for [WSFS], Ameritas commenced a review of the purported Policy and has determined, upon information and belief, that it was procured as an illegal wager on the life of the Insured as part of a STOLI[3] scheme in violation of Delaware law." (Delaware Litigation, Doc. 1, ¶ 40). Ameritas further alleges that "the source of the funds for the initial premium payment on the Policy was not [Mr. Flaks'] or any person or valid entity possessing an insurable interest in his life. Instead, the source of the premium was a third-party investor(s) who lacked an insurable interest in [Mr. Flaks'] life and was/were participating in a wager on the Insured's life." (*Id*., ¶ 43). Ameritas filed suit, seeking a declaration that the life insurance policy lacked an insurable interest and was void ab initio as an illegal contract wagering on human life.

WSFS counterclaimed, alleging that it "is the undisputed owner and beneficiary of the Policy and paid premiums on behalf of its customer to Ameritas while the Policy was in force based on its customer's understanding Ameritas would pay it the $3 million death benefit when Mr. Flaks died, as Ameritas promised it would under the Policy's terms." (Doc. 8 at PAGEID 126). WSFS's counterclaim alleges that "Ameritas has taken $2,051,310.23 in premiums paid to keep the Policy in force, with the understanding it would pay the death benefit when the insured

---

[3] STOLI policies, i.e., "stranger originated life insurance" policies, "lack an insurable interest and are thus an illegal wager on human life." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr., ex rel. Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1070 (Del. 2011) ("Virtually all jurisdictions . . . prohibit third parties from creating life insurance policies for the benefit of those who have no relationship to the insured.").

2

under the Policy died." (Delaware Action, Doc. 13, Counterclaim, ¶ 2). WSFS also alleges that Ameritas approved the transfer of the Policy from the original owner to a new owner and failed to raise any concerns about the validity of the Policy until Mr. Flaks' death. At that time, Ameritas instituted a review of the Policy and commenced the Delaware Action. WSFS alleges that Ameritas engaged in a scheme "to accept over $2 million in premiums on the Policy, knowing that when the Policy matured, Ameritas would refuse, in bad faith, to pay the death benefit, keep all the premiums paid to it, and force [WSFS] to enforce its rights in litigation." (*Id*., ¶ 8, ¶ 9). WSFS denies that the Policy lacked an insurable interest and brings claims for breach of contract, bad faith, and fraud. (*Id.*, ¶¶ 68-85, 92-100). WSFS brings an alternative claim of unjust enrichment to recoup the excess of $2 million in paid premiums in the event the Policy is found void ab initio. (*Id*., ¶¶ 87-91).

WSFS subpoenaed Mr. Peyton for a deposition in connection with the Delaware Action. Mr. Peyton, a retired former employee of Ameritas, seeks to quash the subpoena as unnecessary, unduly burdensome, and disproportionate to the needs of the case.

**II. Legal standard**

Federal Rule of Civil Procedure 26 permits parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Rule 45 of the Federal Rules of Civil Procedure governs non-party subpoenas. *Riccardi v. Jackson*, No. 2:21-cv-211, 2021 WL 4272065, at *2 (S.D. Ohio Sept. 21, 2021). A non-party subpoena is "subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *3 (E.D. Mich. Nov. 26, 2013) (quoting *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155, 2012 WL 4513600, at *5 (E.D. Mich. Oct. 1,

3

2012)). "If the discovery sought appears 'relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance'. . . ." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quoting *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003)).

Upon a timely motion to quash, a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Because he seeks to quash the subpoena, Mr. Peyton "bears the ultimate burden of proof." *Meyer v. Bank of Am., N.A.*, No. 2:18-cv-218, 2018 WL 6436268, at *2 (S.D. Ohio Dec. 7, 2018) (quoting *Hendricks*, 275 F.R.D. at 253). "In general, protective orders totally prohibiting a deposition should be rarely granted absent extraordinary circumstances." *Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 479 (S.D. Ohio 2014) (quoting *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C. 1987)); *see also Williams v. Wellston City Sch. Dist.*, No. 2:09-cv-566, 2010 WL4513818, at *3 (S.D. Ohio Nov. 2, 2010). Ordinarily, "[it] does [not] matter that the proposed witness is a busy person or professes lack of knowledge of the matters at issue, as the party seeking the discovery is entitled to test the asserted lack of knowledge." *Libertarian Party of Ohio*, 302 F.R.D. at 479 (quoting *Naftchi v. New York University Medical Center*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997)).

Undue burden under Rule 45 is a case-specific inquiry, and the Court should consider factors such as relevance, the need for the deposition, the breadth of the requested discovery, the time period covered, and the burden imposed. *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (citing *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce [the discovery],' and the status of that person as a non-party is a

4

factor." *Id.* (quoting *Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136). A showing of undue burden requires more than the "mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." 9A Wright & Miller, Federal Practice and Procedure § 2463.1.

Further, Federal Rule of Civil Procedure 26 permits the Court to issue for good cause "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such protective orders may specify the terms of the discovery, including timing, and limit the scope of the discovery sought. Fed. R. Civ. P. 26(c)(1)(B), (D). Protective orders are appropriate if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

**III. Analysis**

Non-party Mr. Peyton moves to quash the subpoena for his deposition testimony on the grounds that it is unnecessary, unduly burdensome, and disproportionate to the needs of the case. The Court addresses each of these factors in turn.

As an initial matter, there appears to be no serious dispute that Mr. Peyton possesses relevant information about the Policy at issue in this case. Ameritas's initial disclosures identified Mr. Peyton, former Ameritas Vice President of Claims Services, as an individual who is likely to have discoverable information that Ameritas may use to support its claims or defenses concerning Policy No. U000038534 (the "Policy") taken out on the life of Marvin Flaks (the "Insured"). Specifically, Ameritas represented that Mr. Peyton has information on Ameritas's

5

corporate policy against life insurance policies intended to benefit stranger-investors; Ameritas's corporate policy against life insurance policies that are funded by non-recourse premium financing; and Ameritas's receipt, review, and investigation of the claim for death benefits under the Policy. (Doc. 8-2, Ex. 4 at 7, Ex. 5 at 3-5). Ameritas also identified Mr. Peyton as having knowledge about Ameritas's decision not to pay the death benefit under the Policy, knowledge of any inquiry or investigation conducted by Ameritas or on Ameritas's behalf at any time related to the Policy, including but not limited to, ascertaining the existence of an insurable interest at the inception of the Policy, or ascertaining the truth or falsity of the representations made in the application for the Policy. (Doc. 8-2, Ex. 5). In addition, Mr. Peyton was a member of Ameritas's Special Investigative Unit who was identified as the primary resource for investigation and handling of life and disability claim matters pertaining to possible fraudulent insurance acts. (Doc. 8-2, Ex. 6). Ameritas's claims examiner Scott Foreman testified that during the relevant time frame for the Policy claim, Mr. Peyton was required to approve any claim on a policy of $1 million or more, and Mr. Foreman testified he did not know what Mr. Peyton's process was for approving such claims or who would have such knowledge. (Doc. 11, Ex. 14 at 48). It appears that Mr. Peyton's testimony would be relevant to the claims and defenses in this case, and Ameritas does not specifically argue otherwise.

  Rather, Ameritas argues that Mr. Peyton has no meaningful knowledge about the Policy because he is retired, has no recollection of this specific Policy, was a supervisor whose job did not include examining the claim, and, under "Ameritas's written death claim protocol, once a policy is identified as meeting certain defined criteria, the claim is not handled by the claims department, it is referred to the legal department." (Doc. 1 at PAGEID 9). Mr. Peyton avers that he retired from Ameritas on December 31, 2023. (Peyton Aff., Doc. 4, Ex. O). Mr. Peyton states

6

he does not "currently have any recollection regarding this specific policy, claim, or lawsuit." (*Id.*, ¶ 6). He explains:

> In December 2022, as the head of Claims, I would be cc'd on such emails and communications solely to have an understanding of the number of pending claims being reviewed by legal for administrative purposes. I was two steps removed from the claims examiner who would be reviewing the actual substance of the claim[,] and I would not independently review the substance of any such communication I was cc'd on.

(*Id.*).

Ameritas further argues that any non-privileged information about the claim process would be duplicative of information WSFS has already received in Ameritas's interrogatory responses and the depositions of Mr. Foreman and Ms. Loosle, Ameritas's Rule 30(b)(6) designee about the claims process. In addition, Ameritas states, "While it is true that Ameritas did originally intend to designate Mr. Peyton to discuss the general claims process and to educate himself about this Policy in particular, Mr. Peyton retired during the litigation. So Ameritas designated his successor (Ms. Loosle) instead, who was equally capable of testifying as a designee." (Doc. 1 at PAGEID 10).

Ms. Loosle testified that in 2019, Ameritas instituted an informal process for reviewing potential STOLI policies. (Doc. 11, Ex. 3 at 135:10-136:1). This informal process was prompted by the "*Bergman*" decision[4], which alerted Ameritas that under certain circumstances, an insurer may be able to challenge policies as STOLI even after the expiration of the policy's two-year contestability period. (*Id.* at 79:19-80:4; 135:10-14; 136:17-22). She also testified that in late 2021 or early 2022, Ameritas created formal guidelines and specific criteria for claims employees to utilize to identify potential STOLI policies. (*Id.* at 135:14-19; Doc. 11, Ex. 12). Once identified as potential STOLI, the claim was referred to Ameritas's legal department for

---

[4] *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839 (N.J. 2019) ("*Bergman*").

review, which then initiated an investigation with outside counsel. (*Id*. at 78:7-8; Doc. 11, Ex. 12). After reviewing the Policy in this case, Mr. Foreman referred the claim to the legal department. (Doc. 16-1, Exs. R and S). Ameritas argues that Mr. Foreman and Ms. Loosle thoroughly addressed the claims and review processes leading up to the legal department's review, rendering Mr. Peyton's deposition unnecessary.

In addition, Ameritas asserts that WSFS already has been given the factual information in otherwise privileged documents underlying the legal department and outside counsel's handling of the Policy claim (Doc. 16, Exs. Q, T, U, V), and any questions about the legal department's handling of the Policy's claims process would be subject to the assertion of attorney-client privilege. (Doc. 1 at PAGEID 10). Ameritas states that "drag[ging] Mr. Peyton out of retirement for a deposition about a Policy he does not remember is completely unnecessary, unduly burdensome, and disproportionate to the needs of this case." (*Id*.). Ameritas further argues that a deposition of Mr. Peyton would conflict with a prior order of the special master in the underlying Delaware Action. (Doc. 14 at PAGEID 673-74).

WSFS contends that deposition testimony from Mr. Peyton would not be duplicative because the depositions of Ameritas's employees Mr. Foreman and Ms. Loosle showed they either did not have relevant information possessed by Mr. Peyton or were unable to answer basic factual questions without their recollections being refreshed by Ameritas's counsel during deposition breaks. WSFS points to the deposition testimony of Ms. Loosle indicating she was unable to answer specific questions about the review of the Policy claim for potential STOLI and who developed legal strategies for death claims until after a break in the deposition, after which she read from a piece of paper with her counsel's notes on them. (Doc. 11, Ex. 3 at 135:10-137:15, 157:22-158:19, 305:4-308:15; Doc. 11, Ex. 9). WSFS also cites to the testimony of Mr.

8

Foreman, who testified that Mr. Peyton was responsible for approving any death claims in excess of $1 million or more, and he could not speak to Mr. Peyton's process for approving or denying this Policy's claim. In addition, Mr. Foreman could not identify anyone else with this knowledge. (Doc. 11, Ex. 14 at 18:6-19:2, 48:4-17). WSFS notes that Ameritas's privilege log contains emails authored by Mr. Peyton (who is not a lawyer) from July and August 2019 regarding the topic of "legal strategies for death claims" (*Id*., Ex. 10 at 1), which coincides with the time frame that Ameritas alleges it began an "informal process" for reviewing death claims for potential STOLI. (*Id*., Ex. 3 at 135:10-136:1). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Doc. 11, Ex. 12). WSFS also sought discovery on Ameritas's 2019 decision to implement death claim strategies, including "Who developed the 'legal strategies for death claims' referenced in entry nos. 1 and 2 of [Ameritas's] amended privilege log, when such strategies were developed, and whether and when Ameritas implemented those strategies" (Doc. 8-2, Ex. 11 at 22), in which Ameritas's privilege log shows Mr. Peyton was directly involved (Doc. 8-2, Ex. 10). WSFS contends Ms. Loosle, who was Ameritas' Rule 30(b)(6) designee, was not adequately prepared for this topic (Doc. 11 at PAGEID 468, citing Ex. 3 at 87:25-88:4, 144:14-145:1, 250:20-251:2, 311:4-25).[5]

The Court finds Ameritas has not met its burden on the motion to quash. To the extent the development and implementation of strategies to address claims for potential STOLI are not protected by attorney-client privilege, deposing Mr. Peyton on this topic would not be cumulative of Ms. Loosle's testimony. WSFS claims that Ameritas engaged in a fraudulent scheme to accept premium payments for the Policy and waited until the Policy went to claim

---

[5] Later in her deposition, Ms. Loosle ultimately identified the individuals who discussed the 2019 Bergman decision upon which Ameritas relied to challenge potential STOLI policies after the contestability period. (*Id.*, at 238-239).

before examining it for STOLI. Documents on Ameritas's privilege log show Mr. Peyton authored emails involving "legal strategies for death claims" and was a recipient on emails indicating he was directly involved in such strategies in 2019. (Doc. 8, Ex. 10; Doc. 11, Ex. 20). Ms. Loosle was unable to answer certain questions about Ameritas's strategies and procedures for investigating potential STOLI, including the individuals involved or the context under which they arose (Doc. 11, Ex. 3 at 251), until after she conferred with counsel at a break in her deposition and read from the answers provided in counsel's written notes. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Doc. 11, Ex. 12), but Ms. Loosle was unable to testify about the source of the underlying information or the basis for the procedures set forth in the document. (Doc. 11, Ex. 3 at 86-89). While Ameritas strenuously disputes WSFS's claim of a fraudulent scheme, Mr. Peyton's testimony on his involvement in the 2019 and 2022 STOLI strategies is relevant and non-cumulative.

Nor would Mr. Peyton's deposition conflict with the special master's prior order denying WSFS's motion to compel deposition transcripts of Ameritas's employees from other cases involving Ameritas's refusal to pay the death benefit under a suspected STOLI policy. (Doc. 16 at PAGEID 702-703, citing Doc. 2, Ex. H). WSFS argued that those "related cases" were part of the same Ameritas scheme at issue in this case: challenging policies as STOLI only after it receives the claim for death benefits under the policy. The special master denied the motion to compel, finding the other cases involved completely different policies, and information about the Policy in this case would not be found in the deposition transcripts from other cases involving other policies. (Doc. 2, Ex. H at 3). Nevertheless, the special master stated, "WSFS will be able to take the depositions of Ameritas employees and ask the questions it wants to ask." (*Id.*).

10

Permitting Mr. Peyton to be deposed in this case does not conflict with the special master's order.

Mr. Peyton's affidavit disavowing knowledge of the Policy does not preclude his deposition. "A professed lack of knowledge typically does not constitute good cause and is insufficient to warrant the quashing of a deposition." *Alexander v. F.B.I.*, 186 F.R.D. 60, 64 (D.D.C. 1998) (citing *Naftchi*, 172 F.R.D. at 132; *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc.*, 160 F.R.D. 70, 73 (E.D. Pa. 1995) (denying motion to quash deposition and stating "[the witness'] claim that she lacks personal knowledge does not compel us to rule in her favor . . . [and] is of no moment.")). "A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge." 8A Wright & Miller, Federal Practice and Procedure § 2037. Mr. Peyton, who retired from Ameritas 10 months ago, alleges he has no recollection of the Policy and would only be copied on claims referred for STOLI to understand "the number of pending claims by legal for administrative purposes." (Doc. 4, Ex. O, ¶ 6). WSFS is entitled to test these assertions, including by attempting to refresh Mr. Peyton's recollection through documents. Mr. Peyton's assertions do not justify quashing the subpoena. *See Libertarian Party of Ohio*, 302 F.R.D. at 479.

Finally, Ameritas has not met its burden of showing Mr. Peyton's deposition would impose an undue burden or is not proportional to the needs of the case. Ameritas failed to address the burden and proportionality factors in Mr. Peyton's motion to quash beyond its conclusory assertion that "[to] drag Mr. Peyton out of retirement for a deposition about a Policy he does not remember is completely unnecessary, unduly burdensome, and disproportionate to the needs of this case." (Doc. 1 at PAGEID 10). Ameritas has not identified the manner and

11

extent of the burden Mr. Peyton would endure if he is deposed, nor does it allege any injurious consequences of proceeding with the deposition. *See Bush Truck Leasing, Inc. v. All Ways Auto Transp., LLC*, No. 1:20-cv-511, 2024 WL 2747773, at *4 (S.D. Ohio May 29, 2024) (citing 9A Wright & Miller, Federal Practice and Procedure § 2463.1). In addition, Ameritas has not explained or shown with specificity how the deposition of Mr. Peyton would be disproportionate to the needs of the case. *See William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), *aff'd sub nom*. 2017 WL 3927525 (S.D. Ohio June 21, 2017), *and modified on reconsideration*, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017).

In its reply memorandum, Ameritas contends that "requiring Mr. Peyton to appear for deposition in the context of this case and its tortured history would be unduly burdensome." (Doc. 16 at PAGEID 703). To the extent Ameritas attempts to address the issue of undue burden for the first time in its reply brief, it is too late. "It is well-established that 'arguments made to [the court] for the first time in a reply brief are waived.'" *United States v. Davis*, No. 3:22-cr-106, 2023 WL 7149767, at *2 (E.D. Tenn. Oct. 31, 2023) (quoting *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)). "Raising [an] issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). Therefore, the Court declines to consider Ameritas's new argument.

Even if the Court were to consider Ameritas's argument, the Court is not persuaded that it justifies quashing the subpoena to Mr. Peyton. Ameritas alleges that WSFS's counsel has engaged in bad faith conduct and gamesmanship in conducting the first four depositions of

12

Ameritas's employees, and "Mr. Peyton can expect a similar experience." (Doc. 16 at PAGEID 708). Ameritas goes on to cite specific examples of alleged discovery abuses throughout the Delaware Action in support of this assertion and quotes at length from the deposition of an Ameritas witness. The Court declines to defer to Ameritas's characterization of the lengthy discovery process in the Delaware Action, and such issues appear to be the province of the special master appointed to manage discovery in the litigation. Ameritas has not cited any legal authority for the proposition that such conduct amounts to an "undue burden" under Rule 45.[6] Ameritas has not met its burden under Rule 45 for quashing the third-party deposition subpoena to Mr. Peyton, and the motion to quash is **DENIED.**

Because the Court refers to confidential matters under seal, the parties are ordered to confer regarding any proposed redactions. The proposed redactions and correspondence explaining why the redactions are necessary must be submitted to the chambers' email within one week of the date of this Order.

**IT IS SO ORDERED.**

Date: 10/25/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

---

[6] The Court also note that WSFS has offered to depose Mr. Peyton at the location most convenient for him. (Doc. 11 at PAGEID 475).